## Case No. 7,998.

### In re LAKE SUPERIOR SHIP-CANAL, ETC., CO.

### [10 N. B. R. 76.] [1]

### District Court, E. D. Michigan. 1874.

BANKRUPTCY—PROOF OF DEBT—CONSIDERATION.

Commercial paper, acquired in good faith before maturity, may be proved in bankruptcy by the indorsee upon showing a valid consideration paid by him; and such showing, in such a case, will be held to be a compliance with section 22 of the bankrupt act [of 1867 (14 Stat. 527)], which requires the proof of debt to set forth the consideration of the demand.

[Cited in Re Port Huron Dry-Dock Co., Case No. 11,293.]

The register certifies, that Theodore M. Davis, as receiver of the Ocean National Bank, offered as proof of debt against said bankrupt's estate a deposition setting forth certain loans or advances of money to sundry persons, at different times, in the months of May, July, August, September, and October, 1871, to wit: to William L. Avery to the sum of eighteen thousand eight hundred and fifty dollars; to Perez J. Avery to the sum of eighteen thousand nine hundred and sixty-seven dollars and sixty-nine cents; to J. Edwin Conant & Co. to the sum of ten thousand dollars; to Alfred Wild in the sum of thirty-four thousand five hundred and thirty-four dollars and thirty-three cents; and to Charles Callender to the sum of eighty-two thousand dollars—in all amounting to one hundred and sixty-four thousand three hundred and fifty-two dollars and two cents; the payment of which loans and advances were secured, as alleged in said deposition, by the delivery to the said the Ocean National Bank by said persons, in sundry parcels, of two hundred and fifty-four bonds, under seal, of the Lake Superior Ship-Canal Railroad and Iron Company—the above named bankrupt—for the sum of one thousand dollars each; which the bankrupt corporation promises to pay to the Union Trust Company, or bearer, on the first day of May, 1901, with semi-annual interest, for which coupons are annexed; the payment of which bonds is secured, as is alleged, by a mortgage on the real and personal estate and franchises of said bankrupt;

[1] [Reprinted by permission.]

and which said claimant offers to prove in this case as a secured claim, without relinquishing his security. The proof offered contains no averment whatever as to the consideration for the obligation of the bankrupt, as set forth in these bonds. Entertaining the opinion that under the provisions of the bankrupt act a statement of the consideration of the obligation sought to be proved in bankruptcy, is indispensable, the register declined to file the proof; and at the request of Mr. Alfred Russell, who appears on the part of the claimant, certified the question into court for determination by the district judge.

By HOVEY K. CLARKE, Register:

To entitle a claimant against the estate of a bankrupt to have his demand allowed, the act (section 22) requires that it must be verified by a deposition "setting forth the demand—the consideration thereof," etc. I suppose that there can be no question that the "demand" and "consideration" here intended, are the demand against the bankrupt, and the consideration received by the bankrupt for the obligation—in whatever form it may be—which constitutes the demand. In this case demands against several individuals are stated, and the consideration of the demands as against these individuals is sufficiently set forth. But these do not constitute the demand against the bankrupt. That is stated to be two hundred and fifty-four bonds of the bankrupt, each for the sum of one thousand dollars. There is not only no sufficient showing, but there is no attempt whatever to make any showing of the consideration which moved the bankrupt to make these promises. Nor is any reason alleged for omitting to state such consideration; or to state any reason, if any such is supposed to exist, which will exempt demands of this character from a compliance with the act of congress, as to the statement of a consideration, which is required of all others. I do not overlook the fact, that by the terms of the bond set forth as the demand in this proof they are made transferable, by delivery or not, as the holder may elect; and that this feature gives them something of the character of commercial paper transferable by delivery. If it should be thought that an obligation in this form, or having the effect of negotiable paper, is not included within the intention of the act of congress which provides that "to entitle a claimant against the estate of a bankrupt to have his demand allowed," he must set forth on oath the consideration of it; I think it incumbent on any one assuming such a position, to state the grounds on which it rests. I suppose the power of congress over the subject-matter, to be plenary. It may enact that some debts may be paid in full, before others are paid anything. This power it has exercised in favor of clerks, operatives, and house-servants. It may insist upon the showing of certain facts, or in certain modes,

as the condition of a right to participate in the distribution of a bankrupt's estate. This has been done, as it seems to me, in the provision which requires a claimant to set forth the consideration of his demand; and if the effect shall be to exclude from participation in the distribution of a bankrupt's estate all claims not shown to be founded on a valid consideration, while some occasional hardships may result, the general effect will, on the contrary, be salutary; but whatever may be thought of the rule, if it be clearly expressed in the act, it must be enforced until it shall be changed by the same authority that established it; unless indeed the consequences attending a construction of the statute, according to its apparent intention, shall be seen to be so mischievous that the courts shall be compelled to do, with reference to this provision, as they have with some others of this singularly ill-constructed act, force upon it a construction not within the literal meaning of its terms. The register, however, may, I think, very properly decline the exercise of a judicial function of so important a character as this.

It may, however, be contended that no such forced interpretation is called for in this case; that there are cases to which these specified details of the bankrupt act do not apply. It will then, I think, be only reasonable to expect of those who maintain such an opinion, that they should state so clearly the distinction as that there may be no difficulty in applying it to cases; daily arising in the register's office; in what cases must the statement of a consideration be insisted on, and in what may it be excused. Will it do to say that, in all cases, the holders of negotiable paper acquired before maturity are excused from any attempt to show that such paper had an honest and valid origin? Such an interpretation of the act would certainly have the effect of an amendment of it, in a very important particular. The provision of the law which requires a consideration always to be shown, makes it impossible for a claimant to acquire the right of a creditor of a bankrupt's estate without any affidavit to the good faith of the claim in its origin, and, until this condition has been complied with, however unimpeachable the claim may be as against the bankrupt, the rights of other creditors to the distribution of the bankrupt's effects shall not be affected until all who claim the right to participate in the distribution shall have submitted to the same rule, and have shown, on oath, that the claim of each rests upon a valid consideration. The rule in bankruptcy, it will be observed, is unlike that at common law; here an affirmative showing of good faith is necessary, not merely, as in a common-law action, a prima facie obligation, the good faith of which must be attacked by those who dispute it, before the obligation can be impeached. The bankrupt's knowledge concerning the origin of the claims against his estate and the motives which might affect his action concerning them, are now out of the case. The contesting parties are all creditors, having, in most cases, no knowledge of the character of the claims of each other—hence the wisdom of the provision which subjects them all alike to an oath to the good faith of the claims they present as a condition of being admitted to participate at all in the distribution. I regard this question as one of substance and of much practical importance. I have had occasion before to state my views upon it, when proofs of debt against the same estate were presented by some of the same creditors who are the principal debtors to the claimant now offering this proof, which had many features similar to this. To my opinion, thus expressed, as reported in [Case No. 7,997], I beg leave to refer. I send herewith the original deposition offered by the claimant as his proof of debt.

LONGYEAR, District Judge. The foregoing opinion of the register is, no doubt, sound as applied to simple choses in action, or contracts for payment of money, not negotiable, in the hands of assignees or purchasers of the same. In such case the assignee takes the debt upon the faith of the consideration between the original parties, and must, of course, state the same in his proof of debt in the bankruptcy court. But is this so in regard to negotiable paper in the hands of an indorsee or subsequent holder for value? Such indorsee takes the paper on the faith of its negotiability and the law merchant, and need he, in his proof of debt in the bankruptcy court, state anything more than the consideration paid by him? And, in such case, is not the requirement of section 22 in question, fully complied with by such statement? Whoever puts his negotiable paper afloat contracts with any one who may become the holder of it in good faith and for value, to pay according to its terms. The putting of the paper afloat is a sufficient consideration, so far as such subsequent holder is concerned, and he is legally bound to pay, and the holder is legally entitled to receive the same, whether the maker received any consideration or not. This is the foundation rock upon which rests all confidence in the obligation of commercial paper, and the faith and credit accorded to negotiable paper in the commercial world. It can hardly be supposed that congress intended, by the provision in question, to destroy that foundation. At all events, so violent and revolutionary effect should not be given to the provision, unless it is necessary in order to give it any effect whatever. But, in my opinion, full effect is given the provision as applied to negotiable paper in the hands of innocent holders for value, by requiring such holders to state only the consideration which passed from themselves for the paper. This construction has the effect

merely to change a rule of evidence, while the other construction contended for would have the effect to change the obligation of the contract itself—a thing which congress, no doubt, possesses the power to do, but which it will not be presumed to have done unless by express words or by a clearly necessary implication. I hold, therefore, that it is a compliance with the provision of section 22 of the bankrupt act, requiring creditors to state, in their proof of debt, the consideration, for a holder of negotiable paper to state the consideration which passed from him for such paper. It is proper to observe, however, that if it can be shown that the paper was put afloat in fraud of creditors, and that the holder was privy to or had notice of the fraud, the debt would be rejected even in the hands of a subsequent holder, but, in such case, the attack must come from those who contest the debt. Let it be certified to the register, Hovey K. Clarke, Esq., that Theodore M. Davis, receiver, etc. (his proof of debt appearing to said register to be otherwise regular and in compliance with law and the foregoing opinion), is entitled to be admitted as a secured creditor in this matter, as shall appear to said register by said proofs, without stating therein the consideration which passed to the bankrupts for the bonds in question.